Jamie McGrady
Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
188 W. Northern Lights Blvd., Ste. 700
Anchorage, Alaska 99503
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: jamie_mcgrady@fd.org

Counsel for Defendant John Daniel Brooks

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | Case No. 3:21-cr-00091-TMB-MMS |
|---|---|
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| vs. | |
| JOHN DANIEL BROOKS, | |
| Defendant. | |

Defendant John Daniel Brooks, through counsel, Jamie McGrady, Federal Defender, submits the following memorandum to aid the Court at sentencing, scheduled for October 4, 2022, before the Honorable Timothy M. Burgess. The central question presented in this matter is what sentence will be sufficient but not greater than necessary to achieve the goals Congress established in 18 U.S.C. § 3553(a).

At sentencing, Mr. Brooks will request a sentence of five years, or 60 months, followed by a ten (10) year term of supervised release to include appropriate internet conditions and mental health counseling. Congress prescribed a mandatory-minimum five (5) year sentence for these offenses. 18 U.S.C. § 2252A(b)(1) and (b)(2). The advisory Guidelines range proposed by the presentence report is 78 to 97 months. A sentence within

the Guidelines range overstates the danger Mr. Brooks poses to the public. A five-year sentence, followed by a ten-year term of supervised release, is sufficient but not greater than necessary to achieve the sentencing goals embodied in 18 U.S.C. § 3553(a). The proposed sentence reflects the seriousness of Mr. Brooks' conduct, protects the community from future similar conduct by Mr. Brooks, and provides for his rehabilitation and reintegration into his community.

I. GUIDELINE CALCULATION

In the presentence report, the Base Offense Level is 22, less three (-3) points for acceptance of responsibility and less two (-2) points for lack of distribution. The Guidelines suggest the following enhancements: prepubescent minor (+2); use of a computer (+2); sadistic images (+2); and more than 600 images (+5). These computations result in enhancements of six levels, and a Total Offense Level of 28. With Mr. Brooks as a first-time offender in Category 1, his advisory Guidelines range is 78-97 months. These applied enhancements are common and present in most child possession cases and are not specific or unique to Mr. Brooks' conduct. [1]

---

[1] In 2009, the Sentencing Commission noted that in downloading cases, 94.8 percent of cases involved images of prepubescent minors; 97.2 percent involved a computer; 73.4 percent involved an image of sadistic, masochistic, or otherwise violent conduct; and 63.1 percent involved 600 or more images. *United States v. Dorvee*, 616 F.3d 174, 186, citing United States Sentencing Commission, Use of Guidelines and Specific Offense Characteristics for FISCAL YEAR 2009. In 2009, 96.6 percent of offenders sentenced under § 2G2.2 received an enhancement based on the number of images possessed. *United States v. Tutty*, 612 F.3d 128, 132 (2nd Cir. 2010). Without the enhancements, Mr. Brooks' offense level would be 22, for a sentence after acceptance of 30 to 37 months, with a statutory minimum of 60 months.

Four points were added to Brooks' offense level because of sadistic or masochistic conduct and prepubescent minors. PSR ¶ 25 & 26. Child pornography, by definition, involves sexualized depictions of children. In practice, it typically involves sexual acts that meet the definition of sadistic behavior. The United States Sentencing Commission noted that "typical child pornography images contained in federal offender collections depict prepubescent children engaging in explicit sexual conduct." *See* U.S. SENT'G COMM'N, REPORT TO THE CONGRESS: FEDERAL CHILD PORNOGRAPHY OFFENSES (2012) at page 84 & n. 74 ("2012 Report"). In 2019, nearly every offense (99.4%) included prepubescent minors and 84% included an enhancement for sadistic or masochistic conduct. *See* U.S. SENT'G COMM'N, REPORT TO THE CONGRESS: FEDERAL CHILD PORNOGRAPHY OFFENSES (2021) at page 4 ("2021 Report").

Another characteristic used to increase Brooks' guideline is the most archaic of those included in § 2G2.2 of the Guidelines: "use of a computer." PSR ¶ 27. As the Commission pointed out in its 2012 Report, "Indeed, most of the enhancements in § 2G2.2, in their current or antecedent versions, were promulgated when the typical offender obtained child pornography in printed form in the mail." In 2019, over 95% of non-production child pornography offenders received enhancements for use of a computer. 2021 Report at 4.

More than being outdated in a world where virtually all child pornography is disseminated by computer, it is hard to fathom why the use of a computer would increase a particular defendant's sentence. Historically, child pornography was produced by way

of limited issue media, such as Polaroid or conventional filming. This meant an ever-present demand for new victims and a commercial incentive for producers to create new images as the rarity of the images resulted in high prices. In a case such as Brooks' where the images were available to him and others free of charge through use of a simple search engines, the commercial incentive to create new victims and create new images has largely disappeared.

Five points were added to Brooks' Guideline range because he possessed more than 600 images. PSR ¶ 28. The image count enhancement was also specifically addressed by the Commission in the 2012 Report, which noted that, "in the Internet age, most offenders possess large volumes of images. As a result, the Guidelines, which max out at 600 images or more, fail to differentiate among offenders." 2012 Report at ii-iii. The Commission noted that in 2010, 96.9% of the defendants sentenced for child pornography received some increase in their offense level based on the number of images possessed, and 69.6% received the maximum possible upward adjustment for possessing 600 or more images. 2102 Report at 141. In an age where data is so quickly downloadable, distinguishing cases based on image count is not meaningful.

The United States Sentencing Commission examined offenders sentenced under the federal child pornography guidelines in 2012 and issued the aforementioned report to Congress. That report was supplemented in 2021, when the Commission narrowed its focus

to Non-Production Offenses.² In 2021, the Commission concluded that the non-production child pornography sentencing scheme should be revised to account for technological changes in offense conduct, emerging social science research about offender behavior, and variations in offender culpability and sexual dangerousness. The Commission recommended that three primary factors be considered when imposing sentences in non-production child pornography cases: 1. The content of the offender's child pornography collection and nature of the offender's collecting behavior; 2. The offender's degree of involvement with other offenders, particularly in an internet community devoted to child pornography and child sexual exploitation; and 3. The offender's engagement in sexually abusive or exploitative conduct in addition to the child pornography offense. These three prongs are known as content, community, and conduct. *Id*.

Additionally, the Commission recommended that Congress align the statutory penalty schemes for receipt offenses (requiring a five-year mandatory minimum sentence) and possession offenses (requiring no mandatory minimum sentence). The Commission noted that Congress's prior rationale for punishing receipt more severely than possession had been largely eliminated, noting that the underlying offense conduct in the typical receipt case was indistinguishable from the typical possession case, which resulted in

---

² *See* U.S. SENT'G COMM'N, FEDERAL SENTENCING OF CHILD PORNOGRAPHY: NON-PRODUCTION OFFENSES (2021).

widely disparate sentences in cases with similar facts, depending on which statute was pursued by the government for prosecution.

Congress has not yet implemented the Commission's statutory or guideline recommendations. Amending downward existing sentencing laws for sex offenders is not a popular platform for politicians up for reelection, despite the social science that supports more lenient sentences.

A. **Content, Community, and Conduct**

While Mr. Brooks' collection was quite extensive, he began collecting child pornography when he was in his 20's. He would select and download hundreds or thousands of files at a time, only to go back later and review the actual content that he solicited from the "Grabit" news platform or other similar applications. He did not use peer-to-peer file sharing networks or communicate with anyone through email or instant messaging to obtain images. He also did not distribute child pornography to anyone on the internet. Although Brooks was employed as an analyst programmer, he did not use the Dark Web, or other sophisticated means to conceal his collection.

Mr. Brooks did not engage with others in chatrooms or on other web-based platforms. The Commission found that online communities provided a forum to discuss sexual interest in children without fear of reprisal and helped offenders justify feelings about their online deviant sexual identities. 2012 Report at 96. By not sharing images, or engaging in the online community, Mr. Brooks did not contribute to the online marketplace for images.

Most importantly, most social science research suggests that viewing child pornography alone does not cause offenders to commit additional sex offenses absent other risk factors. 2012 report at 102. The primary risk factors for other sex offending were holding deviant sexual beliefs and anti-sociality. *Id*. at 103. Mr. Brooks made clear during his interview that he would never hurt a child, that he knew that his attraction to children was wrong, and that he wanted help for his problem. His case was publicized at the time of his arrest, and the FBI solicited tips from anyone who had reports on inappropriate contact with Mr. Brooks. There is no evidence that Mr. Brooks has ever acted out towards any children, including his own. Over a dozen community members and family letters wrote letters in support of Mr. Brooks, and specifically cited to a two-adult rule that Mr. Brooks advocated when interacting with children during church activities. *See* Exhibit D-1. His biological children and foster children were interviewed, and there is no indication the Mr. Brooks was ever inappropriate with them.

The 2021 Report also tracked 1,093 non-production child pornography offenders released from incarceration or placed on probation in 2015, with the following results:

- 27.6 were rearrested within three years.
- Of those 1,093 offenders, 4.3 percent (47 offenders) were rearrested for a sex offense within three years

- 88 offenders (8.1%) failed to register as a sex offender during the three-year period.[3]

These numbers reflect a particularly low risk of recidivism for sex offenses, and a less than 30 percent re-arrest rate across the board. Given Mr. Brooks' history and family support, he is a prime candidate for community supervision.

## II. SECTION 3553(A) FACTORS

John "Danny" Brooks is described by his friends and family as generous with his time, deeply religious, and committed to volunteering for various civic organizations. Members of the community who wrote letters on John's behalf trusted him with their own children and never saw any hint of inappropriate conduct. He presents a low risk of danger to the community and has an extremely good prognosis for rehabilitation. He is employable and has substantial family and community support.

### B. Nature of the Offense

The relevant facts of this offense are set forth in the PSR. Mr. Brooks became interested in child pornography when he was in his early 20's. During his interview, he disclosed to law enforcement that when he looked at the images, he would picture himself as a teenage girl and would imagine the encounter through that perspective. He wasn't thinking of the child as a real child, but as a conduit for his own roleplay. In that sense, he

---

[3] Federal Sentencing of Child Pornography: Non-Production Offenses (ussc.gov) at page 7.

kept his fascination with child pornography separate and completely compartmentalized from the real children in his life (as his mother-in-law's letter suggests). He acknowledges that his conduct was compulsive and wrong and understands that each image represents a child whose innocence was stolen by predators, and that by viewing those images, he contributed to the online marketplace of exploitation.

Although Mr. Brooks' proximity to children is concerning, the flipside of that argument is that he has been living around children his entire adult life, and he has not acted out. If his child pornography habit is viewed as an addiction, he has been able to live among children without acting out on his untreated addiction. He wants help. He is relieved that he can now seek therapy and confront the root of this deviant fascination. There is no reason to believe that Mr. Brooks cannot continue to live in the community if he engages in treatment and community supervision. He has now remained out of custody on strict conditions of release for over seven months with no violations or issues. This bodes well for his prospects on supervised release.

C. **History and Characteristics**

Mr. Brooks is 52-years-old and has no prior contact with the criminal justice system. He was raised in a very religious family, and recently experienced the death of both his eleven-year-old son and his father. He has a steady record of employment, a supportive network of friends and family, and no record of ever harming a child. Mr. Brooks is mortified that his secret addiction has finally come to light, and he is surprisingly candid about his decades-long struggle. He is a prime candidate for sex offender treatment, in that

he understands the magnitude of his thinking errors and is looking forward to the opportunity to engage in treatment, both in and out of custody.

Most concerning to Mr. Brooks' family is his Type 1 diabetes complications. When Mr. Brooks was incarcerated by the Department of Corrections, his medically fragile condition was horribly mismanaged, and he lost over 20 pounds. The DOC failed to give him his insulin pump, and his A1C rate increased by almost four points. He often had critically low blood sugar readings. Mr. Brooks also has gluten and dairy sensitivities and was not able to eat a proper diet while in custody. It is critical that the presentence report and the judgment reflect that Mr. Brooks will need advanced medical care, and an insulin pump, to properly manage his diabetes when he enters BOP custody.

### D. Other Section 3553 (a) Considerations

Title 18 U.S.C., Section 3553(a)(2)(A) requires "just punishment." The Supreme Court has noted that a sentence imposing a term of federal probation is punishment. *See*, *Gall v. United States*, 552 U.S. 38 (2007). So certainly, a sentence of limited incarceration followed by supervised release would qualify as such. But Brooks' punishment and consequences do not end there. As a convicted sex offender, he will be forced to register for a period with law enforcement. This will restrict where he can live and work for the rest of his life. Also, his felony conviction has resulted in collateral consequences further stripping him of basic civil rights.

Finally, and perhaps most significant, are the personal effects and punishment his actions have already caused that are particular to him and his circumstance. His family's

adoption of children who were placed in their care has been reversed. By all accounts, Mr. Brooks was a well-respected mentor and member of the community. However, this offense has permanently taken community involvement and its many benefits from him forever. He will also not be able to work in his career field. This punishment is very real to him and has already provided real consequences to him as a result of his conviction.

Title 18 U.S.C., Section 3553(a)(2)(B) requires the court to consider "the need for the sentence imposed … to afford adequate deterrence to criminal conduct." Empirical research from across the country shows no relationship between sentence length and deterrence; thus, deterrence provides no basis for a sentence of any length. There is simply no evidence that increases in sentence length reduce crime through deterrence.

Title 18 U.S.C., Section 3553(a)(2)(C) requires the court to consider "the need for the sentence imposed … to protect the public from further crimes of the defendant." This purpose of sentencing has to do with both the risk of recidivism and the nature of the defendant's prior crimes, if any. It is not a critical factor for those offenders who have little risk of recidivism, whose prior offenses are minor or not dangerous, or who have a strong potential for rehabilitation, perhaps through appropriate treatment they have never received.

Mr. Brooks is a first-time offender, has non-violent characteristics, and has a strong potential for rehabilitation. A 60-month sentence followed by ten years of supervision, during which he will receive offense specific treatment and be required to register at all times, is more than sufficient to provide adequate community protection.

Title 18 U.S.C., Section 3553(a)(2)(D) requires the court to consider "the need for the sentence imposed … to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." When considering this need, the court must be mindful of 18 U.S.C. § 3582 which indicates that "imprisonment is not an appropriate means of promoting correction and rehabilitation." Today, there is substantial evidence that prison, by disrupting employment, reducing prospects of future employment, weakening family ties, and exposing less serious offenders to more serious offenders, leads to increased recidivism, and that community treatment programs are more effective in reducing recidivism than prison treatment programs. Mr. Brooks is committed to overcoming this obstacle and is very interested in sex offender treatment. He can be supervised in the community and again be a contributing member of society.

Next, a sentence as requested above would not create any unwarranted sentence disparity in this case. Each case is different and must be addressed based upon its individual circumstances. The most recent sentencing statistics show that a majority of § 2252A offenses across the entire country result in a below the guidelines sentence.

This case is very similar to *United States v. Don Henderson*, 5:15-cr-00003-TMB. Henderson had a guideline of 210-240 months, and Probation recommended 96 months. The Government recommended 84 months, and the Court imposed a 60-month sentence. In that case, Mr. Henderson had advanced technical knowledge, a large collection of child pornography was found on multiple storage devices and computers, and Mr. Henderson

had been downloading child pornography since he was a teenager. He was also in the process of adopting a child when his conduct came to light.

## III. RESTITUTION

The Government has requested restitution in the amount of $197,671.00. The defendant objects to this astronomical amount and requests a hearing in 60 days.

## IV. CONCLUSION

For the foregoing, a sentence of 60 months is appropriate. Mr. Brooks also requests to self-remand once he is designated to a BOP facility. The Alaska Department of Corrections has already demonstrated that they are not capable of caring for Mr. Brooks' medical condition.

DATED at Anchorage, Alaska this 27th day of September, 2022.

Respectfully submitted,
FEDERAL PUBLIC DEFENDER
DISTRICT OF ALASKA

*/s/ Jamie McGrady*
Jamie McGrady
Federal Defender

Certificate of Service:
I hereby certify that I electronically filed the foregoing and any attachments with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on September 27, 2022. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system.
*/s/ Jamie McGrady*