S. LANE TUCKER
United States Attorney

ADAM ALEXANDER
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: adam.alexander@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:21-cr-00091-TMB-MMS |
| Plaintiff, | ) | |
| vs. | ) | |
| JOHN DANIEL BROOKS, | ) | |
| Defendant. | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

<u>**GOVERNMENT'S SENTENCING RECOMMENDATIONS**</u>

**INCARCERATION** ..................................................................................**97 Months**
**JVTA ASSESSMENT** ..............................................................................**$5,000**
**RESTITUTION** .......................................................................................**TBD**
**FINE**........................................................................................................ **NONE**
**SUPERVISED RELEASE** .....................................................................**LIFE**

## I. Introduction

Mr. Brooks is before the court for sentencing after having pleaded guilty as charged to both counts one and two of the Information; receipt of child pornography and possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A),(b)(1) and 2252A(a)(5)(B), (b)(d), respectively. ECF Doc. 10. There is no plea agreement, written or otherwise, and each party is free to make recommendations accordingly. Given the unprecedented size and disturbing nature of Mr. Brooks' collection of child exploitation materials, the United States is respectfully recommending the imposition of a high-end guideline sentence, the imposition of the mandatory assessments, restitution to the known victims, and a life term of supervised release.

Because Mr. Brooks chose to plead open as charged, there is not a stipulated factual basis in the form of a plea agreement. The United States suggests that the court adopt the factual findings in the Pre-Sentence Report wholesale and is prepared to proffer the testimony of one of the FBI Agents involved in the investigation to the extent necessary.

The district court, however, may consider a wide variety of information at sentencing that could not otherwise be considered at trial, see 18 U.S.C. § 3661, and is not bound by the rules of evidence, see FED. R. EVID. 1101(d)(3). "[A] sentencing judge 'may appropriately conduct an inquiry broad in scope, largely unlimited as to the kind of information he may consider, or the source from which it may come.' " Nichols v. United States, 511 U.S. 738, 747, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994) (quoting United States v. Tucker, 404 U.S. 443, 446, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972)); accord United States v. Showalter, 569 F.3d 1150, 1159 (9th Cir.2009). "[H]earsay evidence of unproved

criminal activity not passed on by a court," for example, "may be considered in sentencing." Farrow v. United States, 580 F.2d 1339, 1360 (9th Cir.1978); see also United States v. Romero–Rendon, 220 F.3d 1159, 1163 (9th Cir.2000) (holding that the district court may rely on an uncontroverted PSR to establish the factual basis for sentencing).

## II. Offense Conduct

The final Pre-Sentence Report (PSR) provides the court with an accurate and fulsome summary of Mr. Brooks' offense conduct. ECF Doc. 59 (Final PSR). Mr. Brooks, who in some sense could be described as a covid casualty, was working remotely for the state of Alaska's Office of Environmental Conservation as a programmer in September, 2021, when other State employees inadvertently observed suspected child exploitation material on the State computer that Mr. Brooks was using at home. PSR ¶ 6. Using a state computer facilitate the receipt of a staggering collection of child exploitation material was in violation of the telework agreement Mr. Brooks signed with the state of Alaska, and the State of Alaska's chief security officer (CSO) promptly reported Mr. Brooks' activities to the FBI, who executed a search warrant at Mr. Brooks' residence on September 22, 2021. PSR ¶ 7.

That search resulted in the discovery of Mr. Brooks' state computer in a cluttered basement home office, as depicted below. Id.

//

//

//

//



It was quickly determined that Mr. Brooks had installed an unsanctioned, personal, one terabyte hard drive inside his state computer:



Mr. Brooks agreed to a recorded, Mirandized interview with FBI Special Agents during the search and admitted that he had a long running interest in child exploitation materials, and that he spent several hours daily during weekdays (reserving weekends for

family activities) browsing, receiving, downloading, and masturbating to images and videos of child sexual exploitation while using his state computer. PSR ¶17. Mr. Brooks, in his early fifties, told the FBI that he had been viewing child exploitation materials for approximately thirty years, and used a particular methodology to receive child exploitation materials in order to avoid law enforcement scrutiny, and that he did not distribute his collection to other pedophiles for the same reason. Id.

Subsequent forensic review of that one terabyte hard drive revealed a downloads folder containing 1,287,321 images and videos in 21,000 sub-folders, which in turn amounted to no less than 28,917 images depicting child sexual abuse, and 519,837 images of child erotica, with the remaining 556,228 images believed to depict child exploitation or child erotica as well, pending manual review. PSR ¶9. Put simply, Mr. Brooks' curated collection of child exploitation materials was too large for even the FBI to easily navigate, review, or tabulate.

Manual review by the FBI, however, did reveal that Mr. Brooks received and possessed images depicting the sadistic abuse and the oral, vaginal and anal sexual assault of infants and toddlers, including infants who were tortured by having their vulvas pierced with needles or lit candles inserted into their anuses. PSR ¶13. Among the videos and images that Mr. Brooks presumably masturbated to during the one to three hours daily he admitted devoting to that pastime include images of children crying as they are being sexually assaulted and a known series of a five-year-old child wearing a collar being forced to fellate a dog. PSR ¶ 15.

//

### III.     Sentencing Calculations

####     a.     *Statutory Minimum and Maximum Sentence*

Mr. Brooks faces a mandatory minimum sentence of five years' incarceration for count one of the Information. There is no mandatory minimum term for count two, possession, and both counts have a maximum term of imprisonment of 20 years. The maximum fine amount for each is $250,000, and the potential term of supervised release is 5 years to life for both. Pursuant to 18 U.S.C. § 2259, Mr. Brooks is obligated to pay restitution to known victims (no less than $3,000 per victim) and is required by 18 U.S.C. § 2259A(a)(1) to pay an assessment of not more than $17,000 in addition to the mandatory additional special assessment of $5,000 as required by 18 U.S.C. § 3014(a)(3) (JVTA).

####     b.     *Guideline Calculation*

The United States agrees with the Presentence Report (PSR) calculation of a total offense level of 28, and a Criminal History Category of I, resulting in the advisory guideline sentencing range of 78-97 months for count one, receipt of child pornography. There appears to be a scrivener's error on page 13 of the PSR eliding specific reference to the five-level enhancement pursuant to §2G2.2(b)(5), but the adjusted offense level (31) is correctly calculated for that count regardless. In an abundance of caution, the United States is recommending that the court impose sentence only for Count One, Receipt of Child Pornography, and will move for dismissal of the lesser included possession offense charged in count two at sentencing. See United States v. Overton, 573 F.3d 679, 695 (9th Cir. 2009) ("[w]hile the Government can indict and prosecute a defendant for both receipt and possession of child pornography, entering judgment of conviction for both is multiplicitous

and constitutionally impermissible when based on the same conduct." (citing United States v. Davenport, 519 F.3d 940, 944 (9th Cir. 2008)).

    c.    *JVTA assessment*

18 U.S.C. § 3014 states that "the court shall assess an amount of $5,000 on any non-indigent person or entity convicted of an offense under . . . chapter 110 (relating to sexual exploitation and other abuse of children)." Chapter 110 includes 18 U.S.C. § 2251(a) for which the defendant is convicted. That statute is silent on how courts should determine a defendant's indigent status. See id. However, simply qualifying for public counsel does not automatically make a defendant indigent for purposes of the JVTA assessment. See United States v. Kelley, 861 F.3d 790 (8th Cir. 2017) (finding no clear error in requiring assessment of defendant who qualified for public counsel); United States v. Saair, 737 Fed.Appx. 342 (9th Cir. 2018) (unpublished) (affirming the assessment imposed against a defendant who argued he was indigent due to public counsel).

The analysis of indigence for the application of this assessment is prospective. See Kelley, 861 F.3d at 801, citing Strange, 692 Fed.Appx. at 349. In Strange the Ninth Circuit found the district court "properly took into account that [defendant] was able-bodied." Id. The Eighth Circuit expanded on this reasoning in Strange where it found a fundamental difference between appointing counsel at the beginning of a case and assessing a fee during sentencing. Id. at 800. A court making a fee assessment should consider the defendant's health, work history, and future earning ability. Id. at 801.

Here, the defendant is a professional with a steady work history and will still be of working age upon release from custody regardless of the sentence imposed. There is no

U.S. v. *Brooks*
3:21-cr-00091-TMB-MMS        7

evidence to suggest he will be indigent for purposes of the JVTA and therefore the Court should impose the $5,000 assessment.

## IV. 18 U.S.C. 3553(a) Analysis and Argument

Section 18 U.S.C. § 3553(a), obliges the sentencing judge to consider (1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution.

While courts must consider the applicable Guidelines range as "the starting point and the initial benchmark," the District Court has the authority to disagree with the guidelines applying in child exploitation offenses on categorical policy grounds, that is, that they Guidelines result in sentences that are too harsh rather than too lenient. United States v. Henderson, 649 F.3d 955, 963 (9th Cir. 2011) ("We therefore hold that, similar to the crack cocaine Guidelines, district courts may vary from the child pornography Guidelines, § 2G2.2, based on policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case.") With that said, our Circuit has likewise "emphasize[d] that district courts are not obligated to vary from the child pornography Guidelines on policy grounds if they do not have, in fact, a policy disagreement with them." Id.

In discussing *why* district courts could reasonably disagree with the §2G2.2 guidelines based on perceived severity, Judge Berzon's concurrence pointed to the fact that from her perspective "an unduly deferential application [of that section] will lead to the

U.S. v. *Brooks*
3:21-cr-00091-TMB-MMS 8

vast majority of offenders being sentenced to near the maximum statutory term." Henderson, 649 F.3d at 965 (Berzon, J. concurring). Judge Berzon also expresses concern in her concurrence about the potential for a strict application of §2G2.2 in non-contact offenses to result in "longer sentences for those who receive or distribute images of minors than the applicable Guidelines recommend for those who actually engage in sexual conduct with minors." Id.

Neither of these basis for expressing a policy disagreement with the application of §2G2.2 is valid in Mr. Brooks' matter, where if he were found to have enticed a child in violation of 18 U.S.C. § 2422(b) or created child pornography in violation of 18 U.S.C. § 2251 he would have been subject to the much higher mandatory 10-and-15-year mandatory minimum (and proportionately higher maximum) sentences for each potentially "hands-on" offense.

Instead, the advisory guideline range is 78-97 months, less than half the maximum statutory term even at the high end, and substantially lower than the mandatory minimum terms for contact offenses. To the extent that this court shares "widespread dissatisfaction [among judges] with the extreme length of the Guideline-recommended sentences," it can rest assured here that the Guideline-range sentence recommended by the United States would not serve to "concentrate[e] offenders at the top of the sentencing spectrum." Cf. United States v. Apodaca, 641 F.3d 1077, 1083 (9th Cir. 2011)

A guideline range 97-month sentence for a collection of child exploitation material far smaller than Mr. Brooks' archive was upheld as substantively reasonable in U.S. v. Blinkinsop, where the defendant in that matter "admittedly obtained in excess of 600

images, including 42 videos, showing prepubescent children engaged in sadistic and masochistic sexual acts by using specific search terms over the . . . contradicting Blinkinsop's contention that he was merely a passive collector of [child] pornography and a marginal player in the overall child pornography business." United States v. Blinkinsop, 606 F.3d 1110, 1117 (9th Cir. 2010) (internal citations omitted).

The United States readily concedes, however, that sentencing in these matters is an unquestionably challenging endeavor for the district courts, and the mere existence of comparable sentences even in the case of similarly situated defendants is of limited utility and should not be outcome determinative.

Here, the United States anticipates that the court will hear stirring appeals and impassioned arguments for leniency at sentencing from those who care for Mr. Brooks and his able counsel. Testimonials and character evidence provided by those who presumably had no understanding of Mr. Brooks' depravity, "should be treated with some reservation, as we can presume that "witnesses who testified about [the defendant's] character . . . had no knowledge of his private proclivities or interests, including his interest in [child exploitation]," and instead the court should take for granted that the harm imposed "is not a thing that can be overlooked by the suggestion that the public persona of [the defendant] is a man of good character, of trustworthiness and grace." Overton, 573 F.3d at 700 (9th Cir. 2009).

Mr. Brooks received one of the largest collections of child exploitation materials seen in our District to date. Those materials include some of the worst depictions of sadism involving child victims known to exist. Mr. Brooks received and possessed so many

images of child exploitation that it was impractical for the FBI to review each one. If there is any defendant any defendant convicted of receipt of child pornography is deserving of a high-end yet still within Guidelines sentence, it is Mr. Brooks. To impose any less would do violence to fundamental concepts of fairness and equity (in addition to the 3553(a) factors) for both the victims in this case and the vast majority of other similarly situated defendants charged with the same offense who were not able to amass the same staggering quantity of child exploitation materials but have been subject to the same Guidelines.

## V. Conclusion

For the foregoing reasons, the United States respectfully submits that a sentence of 97 months imprisonment followed by a life term of supervised release is sufficient but not greater than necessary to reflect the seriousness and provide just punishment for the offense and protect the public from further crimes of the defendant.

RESPECTFULLY SUBMITTED September 27, 2022, in Anchorage, Alaska.

S. LANE TUCKER
United States Attorney

s/ Adam Alexander
ADAM ALEXANDER
Assistant U.S. Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2022,
a true and correct copy of the foregoing
was served electronically on the following:
Federal Defender Jamie McGrady

s/ Adam Alexander
Office of the U.S. Attorney